■ Soho Generation of New York, Inc., Respondent, v Tri-City Insurance Brokers, Inc., Defendant, and Keep, Inc., Doing Business as Keep Insurance Services, Appellant. [683 NYS2d 31] —Judgment, Supreme Court, New York County (Stephen Crane, J.), entered August 13, 1997, upon a jury verdict in favor of plaintiff and against defendant Keep, Inc., doing business as Keep Insurance Services (Keep) in the principal sum of $395,000, plus interest and costs, which brings up for review the order of the same court and Justice, entered June 17, 1997, which denied defendant Keep's CPLR 4404 motion, modified, on the law, the facts and in the exercise of discretion, the motion granted to the extent of vacating the judgment as against defendant Keep and the matter remanded for a new trial on damages only, and otherwise affirmed, without costs.

Plaintiff, which operated a retail clothing store in Manhattan, requested that its insurance broker, defendant Keep, obtain new property insurance after its existing policy had been canceled in May 1991. Keep was aware that plaintiff's corporate predecessor had had several insurance losses, and, more particularly, that plaintiff had suffered a $205,000 soot damage loss in December of 1990. Nevertheless, Keep's principal prepared an application reflecting only two burglary losses totaling $78,000 over the preceding two years. In its efforts to procure new coverage, Keep employed the services of defendant Tri-City Insurance Brokers, Inc., a wholesale broker, which proposed plaintiff as a potential insured to Industrial Indemnity Insurance Company. From the application prepared by Keep, Tri-City derived a "Property Submission", which it sent to Industrial. Based on this submission, Industrial issued a policy to plaintiff for the period of June 9, 1991 through June 9, 1992. It is not disputed that plaintiff neither authorized nor had knowledge of Keep's submission of an application omitting its full loss history.

On January 28, 1992, plaintiff sustained a loss as a result of a boiler "puff-back", which allegedly caused its inventory to be covered in oily soot. Consequently, plaintiff submitted a claim to Industrial. Industrial commenced an investigation and retained an independent adjustment firm, U.S. Adjustment, to verify and quantify the loss. Stephen Gwertzman, the adjuster assigned to handle the claim for U.S. Adjustment, discovered that plaintiff's loss history, as represented in the Property Submission, was inaccurate, and advised Industrial accordingly. Because of the misrepresentations of prior losses, plaintiff and Industrial agreed to a simultaneous withdrawal of

claim and declination of liability prior to the examination under oath.

Plaintiff thereafter commenced the instant action against Keep and Tri-City, alleging breach of contract to procure enforceable insurance on plaintiff's behalf and negligence in failing to properly disclose plaintiff's prior losses. After joinder of issue and completion of discovery, the matter proceeded to trial before Justice Crane and a jury.

Proof as to plaintiff's damages was established primarily by the testimony of Gwertzman. Gwertzman testified that in ascertaining the dollar amount of the loss, he retained the services of John Cronin, a salvor, and Glenn Edwards, an accountant. Using a loss percentage determined by Cronin based on Cronin's physical inspection of the inventory, and relying on the results of Edwards' examination of plaintiff's books and records, Gwertzman arrived at a loss figure of $395,000. He further testified that he recommended that Industrial pay this amount for the claim, and opined that, but for the misrepresentation, Industrial would have paid the amount he recommended. Despite defendant Keep's objection that Gwertzman had no first-hand knowledge of the information provided by Cronin and Edwards, and had relied exclusively upon same in reaching his conclusion, facts not here disputed, the trial court permitted him to testify.

Similarly, over Keep's objection, Edwards was permitted to testify that plaintiff sustained a net inventory loss of approximately $400,000, which he intended to be forwarded to and relied upon by Industrial. The inventory, however, was never introduced in evidence. Nor did Edwards have any experience in ascertaining the salvage percentage, an integral element of the loss computation that was determined solely by Cronin. Moreover, it is undisputed that Edwards had no personal knowledge of the percentage of the inventory that was examined and was unable to recall when, after the loss, he verified it.

For its defense, Keep introduced into evidence the plaintiff's 1992 income tax return, which indicated that at the time of the loss, the actual inventory available at the premises was substantially less than the amount upon which Edwards had based his calculations.

At the close of evidence, the trial court dismissed the action against Tri-City on the ground that it merely passed on to the insurer the information given to it by Keep, but denied Keep's dismissal motion on the basis that Gwertzman's and Edwards' testimony was legally sufficient to establish what Industrial

would have paid, and the fact that Cronin never testified "allows Keep to argue that Edwards' assessment was somewhat deficient because Cronin wasn't here". In its verdict, the jury found that Keep breached its contractual duty and was negligent in obtaining insurance and awarded plaintiff damages of $395,000.

The trial court correctly held that the broker's failure to accurately disclose plaintiff's prior loss history, including a $205,000 loss within the relevant two-year period, was a material misrepresentation as a matter of law. Such finding was not necessarily precluded by plaintiff's failure to produce the carrier's underwriting manual, and was properly based upon the testimony of the carrier's underwriters describing the pertinent underwriting guidelines (including the importance of loss history and the discretion of underwriters to adjust coverage parameters based on such history), the impact similar losses had on other underwritings, and the adjustment of plaintiff's premium that was made on the basis of the burglary losses that were reported. Such testimony was uncontroverted and consistent in all pertinent respects with testimony of the wholesale broker's employees and plaintiff's expert.

However, because we find that the jury's damages verdict cannot stand, we now modify, to the extent of vacating the jury's award of damages, and remanding the matter for a new trial on that issue.

It is well settled that a broker who negligently fails to procure a policy stands in the shoes of the insurer and is liable to the insured (see, Andriaccio v Borg & Borg, 198 AD2d 253, citing Island Cycle Sales v Khlopin, 126 AD2d 516, 518), with said liability being limited to that which would have been borne by the insurer had the policy been in force (Rodriguez v Investors Ins. Co., 201 AD2d 355, 356, citing American Motorists Ins. Co. v Salvatore, 102 AD2d 342, 346; see also, Kinns v Schulz, 131 AD2d 957, 959; MacDonald v Carpenter & Pelton, 31 AD2d 952, 953-954).

To begin, a broker, standing in the shoes of the insurer, has the right to compel a plaintiff to prove its *actual* damages. Here, plaintiff failed to establish its damages by competent proof. Gwertzman's testimony, at best, established only the amount which, according to Gwertzman, the insurer would have paid but for the broker's misrepresentation—which is an inappropriate measure of damages. Plaintiff's proof on that subject was predicated upon the opinions of two experts, a salvor, who had reported to Gwertzman but did not testify, and an accountant. The accountant testified that in determining

the amount of the loss, he relied on the inventory, taken at retail value, prepared by the plaintiff and checked by the salvor and, using a percentage of that value, determined plaintiff's cost for the inventory. To the extent his calculations relied on the inventory, which was not in evidence, his testimony constituted inadmissible hearsay as to plaintiff's actual damages (see, *Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726).

In ordinary circumstances, given a record of insufficiency of proof of damages, plaintiff would not be entitled to a second opportunity to prove its loss. Since, however, the court accepted this theory of damages and it is obvious that plaintiff did, in fact, sustain damages, it should have the opportunity to prove, by competent evidence, its actual loss (*Fisher v Lober*, 11 AD2d 645). It is true, as the dissent notes, that the trial court made no ruling preventing plaintiff from offering direct evidence of its actual loss. The court did, however, overrule defendant's objection when plaintiff asked Gwertzman the amount he would have recommended that the insurer pay if there had been no prior losses. In such circumstances, where the court may have misled plaintiff to conclude that no additional evidence as to its loss was required, a new trial on damages is appropriate. Concur—Lerner, P. J., Sullivan and Mazzarelli, JJ.

Andrias and Saxe, JJ., dissent in part in a memorandum by Saxe, J., as follows: Because I take issue with the majority's conclusion affording plaintiff a new trial on the issue of damages, I dissent, and would reverse and dismiss the complaint.

As the majority states, a broker who negligently fails to procure a policy is liable to the insured, and the extent of its liability is defined as that sum for which the insurer would have been liable had the policy been in force. Plaintiff contends that since the standard is that which the insurer *would have paid*, its damages may be proved simply by testimony by the independent insurance adjuster hired by the insurer, indicating the amount the insurer would have paid based upon the adjuster's assessment and recommendation.

This misstates plaintiff's burden of proof, since were plaintiff to sue its insurer to recover under a viable policy, the plaintiff's obligation would be to prove its actual damages, by evidence in admissible form (*see, Falchook Mkts. v Warner Reciprocal Insurers*, 42 NY2d 1063). Indeed, the burden to prove actual damages by admissible evidence is the applicable standard in all professional malpractice cases (*see, e.g., Lavanant v General Acc. Ins. Co.*, 212 AD2d 450). There is no reason why plaintiff's burden of proof, where the insurance broker steps into the

place of the insurer for purposes of liability, should be satisfied by the opinion of an independent insurance adjuster as to what the insurer would have paid pursuant to his recommendation, which recommendation was formed on the basis of undisclosed underlying facts.

Accordingly, I agree with the majority at least to the following extent: (a) the plaintiff failed to sustain its burden to present a competent showing of actual damages; (b) the conclusions reached by the independent adjuster were based upon evidence not before the jury, and his testimony was entirely hearsay; and (c) the plaintiff's burden of proof may not be satisfied solely by such hearsay.

However, I differ from the majority in that I conclude that as a result of plaintiff's failure to satisfy its burden of proof, the verdict must be set aside and plaintiff's complaint dismissed.

Normally, when this Court determines that the plaintiff failed to present sufficient evidence to support a verdict in its favor, the result is dismissal of the case (*see*, 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.06; *Cohen v Hallmark Cards*, 45 NY2d 493, 498). A new trial may be ordered where the jury's findings are contrary to the weight of the evidence (*see*, CPLR 4404 [a]; *Cohen v Hallmark Cards*, *supra*), or where required by the interest of justice, such as where the court made important errors in rulings such that the plaintiff was thereby prevented from putting on its full case (*see*, *e.g.*, *Smith v Kuhn*, 221 AD2d 620 [trial court erroneously. excluded relevant evidence]).

Neither circumstance is presented here. Plaintiff affirmatively chose to limit its case to the testimony of the independent insurance adjuster and the accountant he hired, although the conclusions they reached were based upon the findings of the salvor, who was not called to testify. Plaintiff presumably made that choice due to its concerns about relying upon the testimony of an expert who was previously convicted of crimes related to insurance fraud. Nevertheless, the decision to present the case in this way was freely and knowingly made. The failure of proof was the result of that choice.

The trial court made no erroneous ruling preventing the plaintiff from offering direct evidence of its actual loss. Neither its acceptance of plaintiff's theory of damages nor its elicitation of testimony from a witness in any way constituted errors such as would justify awarding plaintiff a new trial. It is not the obligation of the Trial Judge to inform the plaintiff that its theory of damages is incorrect, or that its showing is insufficient. Nor should questioning of a witness by the court, geared to-

ward clarifying or expediting a witness's testimony, put the plaintiff who has offered insufficient evidence in a *better* position, entitling it to a new trial to which it would otherwise *not* be entitled. Granting a new damages trial under these circumstances is supported by neither statute nor case law.