OPINION OF THE COURT
Geoffrey J. O’Connell, J.
The parties to this action have agreed to a bench trial of this third-party action on a submitted stipulation of facts. The third-party plaintiff DeSanto Construction Corp. seeks to recover from third-party defendant Fish-Miller Associates, Inc., sums expended in the defense of the main action and to satisfy the judgment.
Stipulated Facts
Robert Maheu, an employee of DeSanto Construction Corp., made a claim for personal injuries sustained while working at a Long Island Railroad (Railroad or LIRR) station project.
DeSanto Construction had been hired to provide construction services with respect to the installation of elevators. The contract between DeSanto Construction and the Railroad required that DeSanto add the LIRR to its insurance policy as an additional insured. DeSanto Construction made a request to its insurance agent, Fish-Miller Associates, that its insurance carrier, Royal Insurance Company of America, add the Railroad to its existing general liability policy as an additional insured for the project. Fish-Miller Associates, however, took no steps to implement the request.
On April 20, 1992, Robert Maheu sustained injury while removing an elevator at the Lynbrook railroad station. According to the complaint in the action he commenced against De-Santo Construction and the Long Island Railroad, Mr. Maheu, while standing on a ladder, attached a block and tackle device to the elevator support beam and to the elevator cab. He then cut the elevator cable and began to lower the elevator cab using the block and tackle device. However, the block and tackle cable snapped and Mr. Maheu was propelled through the roof of the cab which ultimately fell to the floor of the elevator pit. When both DeSanto Construction and the LIRR called upon Royal Insurance to fulfill its obligations under the insurance policy and provide their defense to the Maheu action, the LIRR learned that it had never been added to the policy as an additional insured and, not surprisingly, Royal Insurance declined to either defend or indemnify the Railroad. The State Insurance Fund defended DeSanto Construction pursuant to its employer’s liability insurance policy.
*416 A preliminary conference held on June 6, 1994 led to an order which, inter alia, permitted Maheu to discontinue with prejudice his direct action against DeSanto Construction while granting the Long Island Railroad leave to commence a third-party action against DeSanto. The Railroad’s third-party action resulted in summary judgment in its favor. For its part, DeSanto Construction brought claims against Fish-Miller Associates and Royal Insurance based on the failure to provide insurance coverage for the Railroad. All claims against Royal Insurance were denied (Maheu v Long Is. R. R., 244 AD2d 465 [2d Dept 1997]; DeSanto Constr. Corp. v Royal Ins. Co., 278 AD2d 357 [2d Dept 2000]). As a result of these various proceedings, the State Insurance Fund was required to defend the Long Island Railroad and pay the judgment ultimately recovered by Maheu.
In this proceeding, the State Insurance Fund, as subrogee, seeks to be indemnified by Fish-Miller Associates for the sums expended in defending the Railroad and in paying the judgment.
Brokers’ Liability
Insurance agents have a common-law duty to obtain the coverage requested within a reasonable time or inform their client of their inability to do so (Murphy v Kuhn, 90 NY2d 266, 270). The liability of an agent who negligently fails to procure requested coverage is measured by the liability which would have been bourne by the insurer had the coverage been obtained. (Soho Generation v Tri-City Ins. Brokers, 256 AD2d 229 [1st Dept 1998]; see, Santaniello v Interboro Mut. Indem. Ins. Co., 267 AD2d 372 [2d Dept 1999].) The State Insurance Fund claims that it is entitled to be indemnified by the Fish-Miller Associates for the sums expended in defending and paying the judgment on behalf of the Long Island Railroad because Royal Insurance would have been required to undertake the defense and pay the judgment but for the dereliction of Fish-Miller Associates.
Fish-Miller Associates asserts that the State Insurance Fund has no claim against it because DeSanto Construction sustained no loss as a result of its nonfeasance. It argues that the State Insurance Fund succeeded only to the rights which De-Santo Construction would have had and that DeSanto Construction suffered no injury. Specifically, Fish-Miller Associates argues that it was required to do three things for DeSanto Construction: (1) obtain workers’ compensation and employer’s *417 liability insurance; (2) obtain contractual liability insurance; and (3) have the LIRE named as an additional insured on the liability policy it obtained for DeSanto Construction. It contends that the insurance it did obtain sufficiently protected DeSanto Construction, so that its admitted failure to have the LIRE named as an additional insured resulted in no injury to DeSanto Construction.
The policy Fish-Miller Associates obtained from the State Insurance Fund on behalf of DeSanto Construction was a “Workers’ Compensation and Employers’ Liability” policy. Part Two, section B of that policy, committed the State Insurance Fund to pay damages for which DeSanto Construction was held liable to a third party by reason of an injury to one of DeSanto’s employees.
The State Insurance Fund argues that if Fish-Miller Associates had performed as requested and had the Railroad been named as an additional insured on DeSanto Construction’s policy with Royal Insurance, then Royal Insurance would have been required to defend the LIRE and it would have been precluded from bringing a third-party action for indemnification against DeSanto Construction because the antisubrogation rule would have precluded such a claim against another insured under the same policy. In such a scenario, Royal would also have been required to pay the eventual judgment.
Antisubrogation Rule
“As a rule, an insurer that has paid a claim on behalf of an insured who is only vicariously liable for the loss is entitled to recover the amount paid by way of indemnity from the wrongdoer.” (North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 291.) The right to indemnity “arises from the equitable principle that the wrongdoer ought to bear the responsibility for the loss.” (Ibid.) However, what has come to be known as the “antisubrogation rule” precludes an insurer from being subrogated to a claim against its own insured, at least where the loss involved is one which the policy of insurance was intended to cover. (See generally, 16 Couch, Insurance 3d § 224.1 et seq.) “To allow the insurer’s subrogation right to extend beyond third parties and to reach its own insured would permit an insurer, in effect, £to pass the incidence of loss * * * from itself to its own insured and thus avoid the coverage which its insured purchased’ (Home Ins. Co. v Pinski Bros., 160 Mont 219, 226, 500 P2d 945, 949).” (Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465, 471.)
*418 In circumstances more analogous to those of the instant case, the antisubrogation rule bars an insurance company from being subrogated to the indemnification claim of a property owner against a general contractor whose negligence was the sole cause of the loss where the contractor, pursuant to its contract with the owner, procured insurance coverage for the owner whether as an additional insured under the contractor’s policy or under a separate policy (North Star Reins. v Continental, 82 NY2d 281). The rule addresses particular dangers which would exist were the insurance carrier permitted to be subrogated to the property owner’s claim.
“[T]he mutual insurer, as subrogee of the owner, can fashion the litigation so as to minimize its liability under the [General Contractor Liability Policy]. By failing to assert a contractual indemnification claim on the owner’s behalf, the insurer can trigger coverage under other insurance policies held by the contractor such as a workers’ compensation or excess policy [citations omitted].” (North Star Reins. v Continental, at 296.)
North Star precludes subrogation between the owner and contractor to avoid an inequitable allocation of loss occasioned by the conflicted interests of the insurance carrier who controls the litigation (see, North Star Reins. v Continental, supra at 298 [Simons, J., dissenting]).
Application of Principles
The State Insurance Fund contends that “but for” Fish-Miller’s nonfeasance the antisubrogation rule would have prevented Royal Insurance from pursuing a claim on behalf of the LIRE for indemnity against BeSanto Construction because the Railroad would have been an additional insured under the Royal Policy. Under such circumstances, the State Insurance Fund would not have been required to defend the Railroad or pay the judgment against it.
While Fish-Miller Associates may figuratively stand in the shoes of Royal Insurance by virtue of its failure to have the LIRE named as an additional insured on BeSanto Construction’s existing insurance policy, it is not Royal Insurance. Fish-Miller was not an insurer of both the owner and the general contractor and it could not control the litigation. Without either control of the litigation or any apparent conflict of interest, there is no policy reason to apply the antisubrogation rule and no risk that the allocation of loss under traditional equit *419 able principles will be distorted. Furthermore, Fish-Miller is not pursuing a subrogation claim against its own insured.
The Court of Appeals in North Star rejected “the Preindemnification Doctrine,” which had deemed a contractual requirement by the property owner that it be named an additional insured, a waiver of the right to common-law indemnification stating: “We conclude that the theories advanced in support of preindemnification do not justify the departure from longstanding principles of indemnification.” (North Star Reins. v Continental, supra at 292.) The State Insurance Fund offers no reason why such “long-standing principles of indemnification” should control the resolution of this case as well.
Reduced to its essence, the State Insurance Fund, as subrogee of DeSanto Construction, claims that it was damaged by Fish-Miller’s nonfeasance in that it lost the benefit of the antisubrogation rule. In North Star, the Court of Appeals found that the disparity in the premiums for the contractor’s liability insurance and the owner’s liability insurance signaled “that indemnification was contemplated by the parties.” {Ibid.) Here, there is no evidence that the premium paid to the State Insurance Fund was lowered in consequence of DeSanto’s contractual obligation and attempt to have the LIRR named as an additional insured on its Royal Insurance policy, thereby implicating the antisubrogation rule. Thus, DeSanto Construction had no interest in having the Railroad named as an additional insured other than to satisfy its contractual obligation. Surely it was a matter of indifference to DeSanto which of the two insurance policies it had purchased provided the defense and paid the judgment since it had no apparent effect on the premiums.
Nor is there any suggestion that the LIRR had any purpose in requiring that it be named as an additional insured on the Royal policy other than to protect itself. Certainly the Railroad did not impose that contractual obligation to render the antisubrogation rule applicable since that rule would curtail, rather than expand, its indemnification rights.
Accordingly, the action and claims by DeSanto Construction against Fish-Miller Associates are dismissed.