OPINION OF THE COURT
 

 Bellacosa, J.
 

 The question for this case is whether an insurance agent should be liable to a former customer for tortious misrepresentation and breach of implied contract. The alleged wrongdoing is a failure of the defendant insurance agent to advise plaintiff Thomas Murphy as to possible additional insurance coverage needs. The theory of the lawsuit and the asserted duty is a special relationship and special level of advisory responsibility.
 

 The Appéllate Division affirmed an order of Supreme Court, which granted defendants’ motion for summary judgment and dismissed the complaint. Plaintiffs appeal pursuant to leave granted by this Court. We affirm the order of the Appellate Division because no special relationship was established on this record.
 

 Plaintiffs Thomas Murphy and Webster Golf Course, Inc. sued defendants Donald C. Kuhn, Kuhn & Pedulla Agency, Inc., and its predecessor Roman A. Kuhn Agency, alleging professional negligence and breach of implied contract. This dispute originates in a 1991 automobile accident in Florida involving Murphy’s son. One person died and several others suffered serious injuries as a result of the accident. At that time, the title to the son’s car was in his father’s name and the personal insurance was placed under the commercial automobile policy covering Murphy’s business, Webster Golf Course, Inc. After exhausting the $500,000 policy limit to settle the car
 
 *269
 
 accident claims, Thomas Murphy assertedly paid an additional $194,429.50 plus $7,500 in attorneys’ fees. Then, he sued these defendants to recover the additional sums he had to pay personally.
 

 Defendants began providing the property, casualty and liability insurance to plaintiffs in 1973 in connection with their golf business. Beginning in 1977, defendant Donald Kuhn also handled all of Murphy’s personal insurance needs, providing him with both homeowners insurance and personal automobile coverage. In 1979, plaintiff Thomas Murphy and his partner, Edward Rieflin, completed their purchase of the Happy Acres Golf Course and formed Webster Golf Course, Inc. Happy Acres had been a client of the Roman A. Kuhn Agency since 1957.
 

 In 1990, Kuhn placed personal automobile coverage for Murphy with The Hartford, as insurer. Later that year, Hartford notified Murphy that his coverage was in danger of cancellation due to the poor driving records of his children. Murphy then transferred the insurance covering his son’s car, which was registered and titled in Murphy’s name, from Murphy’s personal policy to Webster Golf Course’s commercial automobile insurance policy. Murphy testified at his deposition that it was his standard arrangement to place title and register his children’s cars in his name. Prom 1984 until the time of the accident, the liability limits on the commercial policy were $250,000 per person and $500,000 total per accident. Murphy never requested higher liability coverage for his personal and family automobile insurance needs, which were subsumed within the commercial automobile liability policy.
 

 Supreme Court concluded that, absent a request by the customer, an insurance agent "owes no continuing duty to advise, guide or direct the customer to obtain additional coverage.” Therefore, acknowledging that on this record plaintiffs never specifically requested defendants to increase the liability limits on the commercial automobile policy, the court held that defendants owed no special duty of affirmative advisement to plaintiffs. The court also declined to adopt plaintiffs’ "special relationship” theory.
 

 Plaintiffs propose that insurance agents can assume or acquire legal duties not existing at common law by entering into a special relationship of trust and confidence with their customers. Specifically, plaintiffs contend that a special relationship developed from a long, continuing course of business between plaintiffs and defendant insurance agent, generating
 
 *270
 
 special reliance and an affirmative duty to advise with regard to appropriate or additional coverage.
 

 Generally, the law is reasonably settled on initial principles that insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage
 
 (see, Wied v New York Cent. Mut. Fire Ins. Co.,
 
 208 AD2d 1132, 1133;
 
 Hjemdahl-Monsen v Faulkner,
 
 204 AD2d 516, 517;
 
 Rogers v Urbanke,
 
 194 AD2d 1024, 1025;
 
 Harnish v Naples & Assocs.,,
 
 181 AD2d 1012, 1013;
 
 Erwig v Cook Agency,
 
 173 AD2d 439). Notably, no New York court has applied plaintiffs’ proffered "special relationship” analysis to add such continuing duties to the agent-insured relationship (se
 
 e, Wied v New York Cent. Mut. Fire Ins. Co.,
 
 208 AD2d 1132, 1133-1134,
 
 supra).
 

 Recently, however, this Court recognized a special relationship in a commercial controversy, involving no generally recognized professional relationship
 
 (see, Kimmell v Schaefer,
 
 89 NY2d 257, 260). We held that the relationship between the parties "under the circumstances [there] required defendant to speak with care”
 
 (id.,
 
 at 260).
 
 Kimmell
 
 cautions, however, that "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified”
 
 (id.,
 
 at 263). For example, "[professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care”
 
 (id.,
 
 at 263, citing
 
 Ossining Union Free School Dist. v Anderson LaRocca Anderson,
 
 73 NY2d 417 [engineering consultants];
 
 White v Guarente,
 
 43 NY2d 356 [accountants];
 
 Ultramares Corp. v Touche,
 
 255 NY 170 [accountants];
 
 Glanzer v Shepard,
 
 233 NY 236 [public weighers]).
 

 The Court concluded that given "the absence of obligations arising from the speaker’s professional status” in the commercial context, "there must be some identifiable source of a special duty of care” in order to impose tort liability
 
 (id.,
 
 at 264). "The existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech”
 
 (id.).
 
 We determined, to be
 
 *271
 
 sure, that "[w]hether the nature and caliber of the relationship between the parties is such that the injured party’s reliance on a negligent misrepresentation is justified generally raises an issue of fact”
 
 (id.).
 
 It is important to note that
 
 Kimmell
 
 is significantly distinguishable from the instant case, which involves an insurance agent-insured relationship and an alleged failure to speak. We therefore allude to
 
 Kimmell
 
 for its general relevance and disclaim any implication of a direct, precedential applicability in the insurance relationships context.
 

 Even assuming the general applicability of the "special relationship” theory in the customer-agent automobile insurance coverage setting, we conclude that the relationship between these parties was insufficiently established to warrant or justify this case surviving a defense summary judgment motion. As a matter of law, this record does not rise to the high level required to recognize the special relationship threshold that might superimpose on defendants the initiatory advisement duty, beyond the ordinary placement of requested insurance responsibilities. Rather, the record in the instant case presents only the standard consumer-agent insurance placement relationship, albeit over an extended period of time. Plaintiffs’ plight does not warrant transforming his difficulty into a new, expanded tort opportunity for peripheral redress. The record does not support plaintiffs’ effort in this manner to shift to defendant insurance agent the customer’s personal responsibility for initiating, seeking and obtaining appropriate coverage, without something more than is presented here.
 

 We note in this respect that Murphy never asked Kuhn to increase the liability limits on the Webster Golf Course commercial automobile policy. In fact, there is no indication that Murphy ever inquired or discussed with Kuhn any issues involving the liability limits of the automobile policy. Such lack of initiative or personal indifference cannot qualify as legally recognizable or justifiable reliance. Therefore, there was no evidence of reliance on the defendant agent’s expertise, as sharply distinguished from
 
 Kimmell (contrast, Kimmell v Schaefer, supra,
 
 89 NY2d, at 264).
 

 The absence of reliance is further reflected in Murphy’s deposition testimony that it was his standard procedure to simply register his children’s cars in his name. Additionally, Murphy’s deposition description of his relationship with Kuhn concerning the golf course’s general insurance matters shows that he had not met personally with Kuhn to discuss the insurance needs of Webster Golf Course, Inc. for approximately 12
 
 *272
 
 years preceding the accident in question. Rather, his partner Rieflin was the one actively and personally involved in handling the insurance needs of the golf course.
 

 We also note that Murphy’s contention that he mistakenly believed that the commercial policy had a $1,000,000 liability limit on all covered vehicles can be given no weight in resolving this dispute on this theory. The liability coverage had remained the same since 1984 and Murphy’s deposition testimony failed to establish the basis for his plainly unfounded assumption. Therefore, plaintiffs are not entitled to advance beyond the summary judgment stage of this lawsuit because they failed to establish the existence of a legally cognizable special relationship with their insurance agent in this standard set of circumstances.
 

 Plaintiffs-appellants urge this Court to avoid generally absolving insurance agents from legal principles which subject other individuals to duties beyond those rooted in the common law. They overstate the concern a.nd effect of this decision and the principle that emanates from it. Our decision today does not break any new ground and does not immunize insurance brokers and agents from appropriately assigned duties and responsibilities. Exceptional and particularized situations may arise in which insurance agents, through their conduct or by express or implied contract with customers and clients, may assume or acquire duties in addition to those fixed at common law. As with
 
 Kimmell,
 
 the issue of whether such additional responsibilities should be recognized and given legal effect is governed by the particular relationship between the parties and is best determined on a case-by-case basis
 
 (see, Kimmell v Schaefer,
 
 89 NY2d 257, 264,
 
 supra).
 

 Notably, other jurisdictions have recognized such an additional duty of advisement in exceptional situations where, for example, (1) the agent receives compensation for consultation apart from payment of the premiums
 
 (see, Sandbulte v Farm Bur. Mut. Ins. Co.,
 
 343 NW2d 457, 464 [Iowa];
 
 Nowell v Dawn-Leavitt Agency,
 
 127 Ariz 48, 51, 617 P2d 1164, 1168), (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent
 
 (see, Trupiano v Cincinnati Ins. Co.,
 
 654 NE2d 886, 889 [Ind] [applying Michigan law]); or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on
 
 (see, Trotter v State Farm Mut. Auto. Ins. Co.,
 
 297 SC 465, 377 SE2d 343). In these circum
 
 *273
 
 stances, insureds bear the burden of proving the specific undertaking
 
 (id.).
 
 The relationship established in the instant case does not rise to the level of these exceptional situations and we refrain from determining when the special relationship analysis may apply in the insurance context.
 

 We do, however, take note that the uniqueness of customary and ordinary insurance relationships and transactions is manifested by "the absence of obligations arising from the speaker’s professional status” with regard to the procurement of additional coverage
 
 (Kimmell v Schaefer, supra,
 
 89 NY2d, at 264). As stated, it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage
 
 (see, Wied v New York Cent. Mut. Fire Ins. Co.,
 
 208 AD2d 1132, 1133,
 
 supra).
 
 No doubt, therefore, public policy considerations will have to be weighed on the question of whether to override this settled principle by recognizing additional advisement duties on insurance agents and brokers
 
 (see, Farmers Ins. Co. v McCarthy,
 
 871 SW2d 82, 85-86 [Mo]). But we do not reach that question here.
 

 Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status
 
 (see, id.).
 
 Insureds are in a better position to know their personal assets and abilities to protect themselves more so than general insurance agents or brokers, unless the latter are informed and asked to advise and act
 
 (id.).
 
 Furthermore, permitting insureds to add such parties to the liability chain might well open flood gates to even more complicated and undesirable litigation. Notably, in a different context, but with resonant relevance, it has been observed that "[u]nlike a recipient of the services of a doctor, attorney or architect * * * the recipient of the services of an insurance broker is not at a substantial disadvantage to question the actions of the provider of services”
 
 (Video Corp. v Flatto Assocs.,
 
 85 AD2d 448, 456,
 
 mod
 
 58 NY2d 1026).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs..