[8 NE3d 823, 985 NYS2d 448]

DEBORAH VOSS et al., Appellants, v THE NETHERLANDS INSURANCE COMPANY et al., Defendants, and CH INSURANCE BROKERAGE SERVICES, CO., INC., Respondent.

Argued January 9, 2014; decided February 25, 2014

## POINTS OF COUNSEL

*Dirk J. Oudemool*, Syracuse, for appellants. I. A special relationship existed between appellants and respondent. (*Murphy v Kuhn*, 90 NY2d 266; *Kimmell v Schaefer*, 89 NY2d 257; *Esteve v Abad*, 271 App Div 725; *Gilson v Metropolitan Opera*, 5 NY3d 574.) II. Respondent proximately caused appellants' injuries. (*Howard Stores Corp. v Foremost Ins. Co.*, 82 AD2d 398, 56 NY2d 991; *Kimmell v Schaefer*, 89 NY2d 257; *Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y.*, 10 NY3d 187; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308.) III. Presumptive knowledge of the policy is not sufficient as a matter of law to dismiss this case due to the special relationship. (*Hoffend & Sons, Inc. v*

*Rose & Kiernan, Inc.*, 19 AD3d 1056; *American Bldg. Supply Corp. v Petrocelli Group, Inc.*, 19 NY3d 730.) IV. The *American Bldg. Supply Corp. v Petrocelli Group, Inc.* (19 NY3d 730 [2012]) decision raises questions about respondent's choice to exclude rental income from the policy. (*Kyes v Northbrook Prop. & Cas. Ins. Co.*, 278 AD2d 736.)

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, Albany (*Thomas M. Witz* and *Benjamin F. Neidl* of counsel), for respondent. I. The lower courts were correct to dismiss the complaint because defendant's alleged conduct was not the proximate cause of any injury to plaintiffs. (*Sheehan v City of New York*, 40 NY2d 496; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308; *Ventricelli v Kinney Sys. Rent A Car*, 45 NY2d 950; *Penovich v Schoeck*, 252 AD2d 799; *Rivera v City of New York*, 11 NY2d 856; *Broad St., LLC v Gulf Ins. Co.*, 37 AD3d 126; *Royal Indem. Co. v Retail Brand Alliance, Inc.*, 33 AD3d 392, 11 NY3d 705; *54th St. Ltd. Partners v Fidelity & Guar. Ins. Co.*, 306 AD2d 67; *American States Ins. Co. v Creative Walking, Inc.*, 16 F Supp 2d 1062, 175 F3d 1023; *Quinn v Depew*, 63 AD3d 1425.) II. In the alternative, plaintiffs' claim fails for the separate and distinct reason that Deborah Voss was undisputedly aware of the business interruption limits and did not request that they be raised. (*Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 19 AD3d 1056, 7 NY3d 152; *Chase's Cigar Store v Stam Agency*, 281 AD2d 911; *Nicholas J. Masterpol, Inc. v Travelers Ins. Cos.*, 273 AD2d 817; *Busker on Roof Ltd. Partnership Co. v Warrington*, 283 AD2d 376; *American Bldg. Supply Corp. v Petrocelli Group, Inc.*, 19 NY3d 730; *Murphy v Kuhn*, 90 NY2d 266; *Oddo Asset Mgt. v Barclays Bank PLC*, 19 NY3d 584.) III. Plaintiffs' argument concerning lost rental value coverage is without merit. (*American Bldg. Supply Corp. v Petrocelli Group, Inc.*, 19 NY3d 730; *Broad St., LLC v Gulf Ins. Co.*, 37 AD3d 126.)

**OPINION OF THE COURT**

GRAFFEO, J.

The primary question before us in this insurance dispute is whether a special relationship existed between the insureds and their insurance broker. Under the circumstances of this case, we conclude that the broker failed to meet its burden justifying summary judgment and dismissal of the complaint is not warranted.

This action arises out of property damage and the consequent business interruption sustained by plaintiff insureds as a result

of water damage that occurred following three separate roof breaches in 2007 and 2008. Plaintiffs are Deborah Voss and three business entities owned and controlled by her: Prop-Co, LLC; Classi People, Inc., doing business as Sertino's Café; and Dream People, Inc., doing business as Shiver Model. The water damage occurred in a commercial building owned by Prop-Co at 105 First Street in Liverpool, New York, where Voss operated her businesses. The only defendant on this appeal is CH Insurance Brokerage Services, Co., Inc. (CHI), plaintiffs' insurance broker.

Voss began her relationship with CHI in 2004, before the purchase of the 105 First Street property. At that time, Voss operated two modeling agencies, Shiver Model and another entity, at 7145 Henry Clay Boulevard in Liverpool. Voss met with a representative of CHI, Joe Convertino, Jr., to discuss insurance coverage for the premises and her two companies. At the initial meeting, they discussed property insurance, professional liability coverage and business interruption insurance.[1] Convertino asked Voss to disclose sales figures and other pertinent information to enable him to calculate an appropriate level of business interruption coverage for her companies. According to Voss, Convertino also represented that CHI would reassess and revisit the coverage needs as her businesses grew.

At a follow-up meeting, Convertino recommended a comprehensive policy with defendant The Netherlands Insurance Company (formerly Peerless Insurance Company) that afforded, as relevant here, $75,000 per incident in coverage for business interruption losses. When Voss questioned whether the $75,000 limit was adequate, Convertino allegedly assured her that it would suffice based on the condition of the building as well as the size of her businesses. According to Voss, Convertino also averred that he calculated the level of coverage at a threshold level and reemphasized that, each year, CHI "would take it up as the business evolved." As a result, Voss accepted Convertino's recommendations and paid the premium for the Netherlands

---

1. The purpose of business interruption insurance
   "is to compensate an insured for losses stemming from an interruption of normal business operations due to damage or destruction of property from a covered hazard, thus preserving the continuity of the insured's business earnings by placing the insured in the position that it would have occupied if there had been no interruption" (11 Steven Plitt et al., Couch on Insurance 3d § 167:9 [footnotes omitted]).

policy. No claims under the Netherlands policy were made while the businesses were located at Henry Clay Boulevard.

In April 2006, Prop-Co purchased the 105 First Street premises. The new building had two stories and contained more than twice the square footage of the previous location. Voss decided to move Shiver Model to the second floor and planned to open two new businesses in the same building—Sertino's Café and the Glass Terrace, a catering and banquet business.[2] After Voss discussed the move and the new business arrangements with Convertino, CHI renewed the Netherlands policy with the same $75,000 business interruption limit for the new location and entities. Sertino's Café opened in the fall of 2006 and, by early 2007, Shiver Model had moved to 105 First Street and the Glass Terrace was in operation.

The first loss occurred in March 2007, when Voss arrived at work and discovered multiple leaks in the roof with dripping water. The damage disrupted her business operations and a roofing contractor, defendant D.R. Casey Construction Corporation, was retained to replace the roof. The following month the new roof failed, resulting in far more extensive water damage to both floors of the premises. All three businesses were required to close for various periods of time. Netherlands treated these two roof breaches as separate occurrences under the business interruption policy (for a maximum potential of $150,000 in coverage) but, according to Voss, delayed making any payments. Apparently, plaintiffs ultimately recouped only $3,197 for the first loss and $30,000 for the second loss.

Meanwhile, in the midst of dealing with the roofing issues in the spring of 2007, Voss met with another CHI representative, Carrie Allen, to discuss the renewal of the Netherlands policy. When Voss received a proposal indicating that the business interruption coverage would be reduced from $75,000 to $30,000, she asserts that she questioned Allen about the reduction and Allen's response was that she "would take a look at it." Voss did not follow up, however, because she was preoccupied with the building's extensive property damage. When the Netherlands policy was renewed in April 2007, it reflected a per occurrence limit of $30,000 in business interruption coverage. In August 2007, Sertino's Café was closed and Voss opened a new dining establishment, Bistro 105, in its place.

---

**2.** Voss shut down her other modeling agency some time before the 2006 move to the new building.

In February 2008, the roof failed a third time, causing significant damage to the premises and further disrupting Voss's businesses.[3] In May 2008, while the insurance claims stemming from the third loss were still pending, plaintiffs commenced this action against CHI, Netherlands and D.R. Casey, the roofing contractor.[4] As relevant to this appeal, plaintiffs alleged that a special relationship existed with CHI and that CHI had negligently secured inadequate levels of business interruption insurance for all three losses.[5]

Following discovery, CHI moved for summary judgment dismissing the complaint. CHI advanced three arguments in favor of dismissal. First, CHI asserted that no special relationship was created and, in the absence of a specific request by the insureds for coverage that went unfulfilled, CHI could not be held liable for failing to recommend or obtain higher limits. Second, it contended that the negligence claim failed based on Voss's admission that she had received the policies and was fully aware of the $75,000 policy limit that applied to the first two losses and the $30,000 policy limit in effect at the time of the third loss. Third, CHI claimed that, even if a special relationship existed, any breach of its duty to plaintiffs was not the proximate cause of their injuries. Instead, plaintiffs' damages occurred because Netherlands failed to timely pay the policy limits.

Supreme Court granted CHI's motion and dismissed the complaint, agreeing with each of CHI's contentions. The Appellate Division, with one Justice dissenting, affirmed (96 AD3d 1543 [4th Dept 2012]). The majority disagreed with Supreme Court on the special relationship issue, finding that CHI had failed to meet its burden of demonstrating the absence of a special relationship. Nevertheless, the majority concurred with the other two rationales and upheld Supreme Court's dismissal. The dissent agreed with the majority that a question of fact existed on the special relationship issue but sided with plaintiffs on the other two questions. The dissent reasoned that, assuming a special relationship existed, it was irrelevant whether

---

3. Apparently, there was water damage to both floors of the premises, causing closure of the restaurant business for two months.

4. According to plaintiffs, Netherlands has yet to make any business interruption payment for the third loss.

5. Plaintiffs' claims against Netherlands and D.R. Casey remain pending and are not at issue on this appeal.

plaintiffs were aware of the policy limits and that the proximate cause issue could not be decided as a matter of law on this record.

We granted plaintiffs leave to appeal (20 NY3d 860 [2013]), and now reverse.

As a threshold matter, CHI asserts that we need not address the alternative bases upon which the Appellate Division upheld the dismissal of the complaint because, contrary to the conclusion reached by both the majority and the dissent at the Appellate Division, the record does not support the existence of a special relationship between CHI and plaintiffs. CHI contends that, even read in the light most favorable to the nonmoving party—here, plaintiffs—the evidence confirms only the existence of an ordinary broker-client relationship. Plaintiffs counter that the Appellate Division correctly determined that CHI failed to meet its initial burden of tendering proof that no special relationship arose between them.

On a motion for summary judgment, the moving party (here, CHI) has the burden to establish "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). If the moving party fails to meet this initial burden, summary judgment must be denied "regardless of the sufficiency of the opposing papers" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks, citation and emphasis omitted]). In other words, the burden does not shift to the nonmoving party to persuade the court against summary judgment. We agree with the Appellate Division that CHI failed to meet its threshold burden on the special relationship issue.

As a general principle, insurance brokers "have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage" (*American Bldg. Supply Corp. v Petrocelli Group, Inc.*, 19 NY3d 730, 735 [2012] [internal quotation marks and citation omitted]). Hence, in the ordinary broker-client setting, the client may prevail in a negligence action only where it can establish that it made a particular request to the broker and the requested coverage was not procured. Plaintiffs in this case do not allege that they specifically requested higher business interruption policy limits and have

not proceeded against CHI under this common-law theory of liability. Rather, their claim hinges on the existence of a special relationship.

Where a special relationship develops between the broker and client, we have also indicated that the broker may be liable, even in the absence of a specific request, for failing to advise or direct the client to obtain additional coverage (*see Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 7 NY3d 152, 158 [2006]; *Murphy v Kuhn*, 90 NY2d 266, 272-273 [1997]). In *Murphy*, we recognized that "particularized situations may arise in which insurance agents, through their conduct or by express or implied contract with customers and clients, may assume or acquire duties in addition to those fixed at common law" and that the question of whether such additional responsibilities should be "given legal effect is governed by the particular relationship between the parties and is best determined on a case-by-case basis" (*Murphy*, 90 NY2d at 272). We identified three exceptional situations that may give rise to a special relationship, thereby creating an additional duty of advisement:

> "(1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on" (*id.* [citations omitted]).

Here, the proof submitted by CHI in support of its summary judgment motion—principally, Voss's deposition testimony—did not satisfy its initial burden of establishing the absence of a material issue of fact as to the existence of a special relationship. To the contrary, viewed in the light most favorable to plaintiffs, the evidence suggests that "there was some interaction regarding a question of [business interruption] coverage, with the insured relying on the expertise of the agent" (*id.*). Voss testified that she and Convertino discussed business interruption insurance from the inception of their business relationship. She asserts that he requested sales figures and other relevant data in order to calculate the proper level of coverage. When Convertino later returned with a proposal that included $75,000 in business interruption insurance, Voss avers that she questioned that amount and that Convertino assured her that it was adequate based on his review of her business finances as

well as the layout of the building. Moreover, although the $75,000 per occurrence limit was originally placed in 2004, before plaintiffs moved to 105 First Street and expanded their businesses to include a restaurant and catering operation, Voss testified that Convertino repeatedly pledged that CHI would review coverage annually and recommend adjustments as her businesses grew.

Under these circumstances, we conclude that the complaint cannot be dismissed on the basis that no special relationship arose between the parties. In doing so, we reiterate that special relationships in the insurance brokerage context are the exception, not the norm, and we emphasize that it remains to be determined whether a special relationship existed here. To prevail on their claim, plaintiffs bear the ultimate burden of proving that a special relationship did in fact arise and that they relied on CHI's expertise in calculating the proper level of business interruption coverage during the relevant time frames.[6]

■ We now turn briefly to the two grounds that nevertheless warranted dismissal in the Appellate Division majority's view. As to the first, we agree with plaintiffs that Voss's awareness of the business interruption limits of $75,000 and $30,000 during the relevant policy years does not defeat her cause of action as a matter of law (see generally American Bldg. Supply Corp., 19 NY3d at 736-737). Plaintiffs' claim, predicated on the alleged special relationship with CHI, is that CHI was negligent in failing to recommend higher limits and that plaintiffs relied on CHI in setting the allegedly deficient coverage amounts. Contrary to CHI's assertion, it is wholly irrelevant whether plaintiffs were aware of the limits that were actually procured.

■ As to the second ground for dismissing the complaint, the Appellate Division majority concluded that any negligence on CHI's part in failing to advise plaintiffs to procure more business interruption coverage was not the proximate cause of plaintiffs' losses; rather, it was Netherlands' failure to timely

---

6. The dissent agrees that a special relationship may have begun in 2004 but concludes that, even if it did, it ceased to exist sometime before the placement of insurance for the time periods encompassing the three losses. In particular, the dissent cites an interaction between Voss and CHI's Allen suggesting a breakdown of the relationship. But that conversation did not take place until 2007, during the renewal phase for the final relevant policy period, and we cannot agree that, on this record, the special relationship issue can be resolved against plaintiffs as a matter of law.

pay the claims. But questions of proximate cause and foreseeability should generally be resolved by the factfinder (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]; *see also Mirand v City of New York*, 84 NY2d 44, 51 [1994] ["Proximate cause is a question of fact for the jury where varying inferences are possible"]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion of defendant CH Insurance Brokerage Services, Co., Inc. for summary judgment denied.

SMITH, J. (dissenting). I agree with the majority that the case turns on the "special relationship" issue. I think, however, that the record conclusively establishes that any such relationship between plaintiffs and their insurance agent, CHI, had ceased to exist by the time of the events in question. Thus I would hold that the courts below properly granted summary judgment dismissing the complaint as against CHI.

As the majority acknowledges, an insurance agent is ordinarily under no duty to give its client advice on what insurance coverage is appropriate (*Murphy v Kuhn*, 90 NY2d 266, 270 [1997]; *Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 7 NY3d 152, 156-158 [2006]). An exception exists where there is a special relationship, but to establish such a relationship requires a "high level" of proof (*Murphy*, 90 NY2d at 271). Where the agent is not separately compensated for its advice, the insured must prove some "interaction" or "course of dealing" with the agent sufficient to show that the insured was relying on the agent's expertise in choosing insurance (*id.* at 272).

Here, if the issue were whether Voss's relationship with CHI was "special" at its inception in 2004, I would agree that summary judgment should be denied. According to plaintiff Deborah Voss's testimony, CHI's representative, Joe Convertino, obtained detailed information about Voss's business and made a recommendation to her about what coverage to purchase. If that advice had been negligently given, and plaintiffs had suffered loss as a result, they might well have had a claim. But plaintiffs do not assert, and there is no evidence, that anything was wrong with the advice Convertino gave in 2004, or that plaintiffs suffered any loss while the policy they purchased in 2004 was in force.

It is true that, according to Voss, Convertino said in 2004 that CHI would continue giving her advice in future years, "as the business evolved." It is quite clear from the record, however,

that—to Voss's frustration—that did not happen. The first of the losses at issue in this lawsuit took place in 2007. By then, the nature of Voss's businesses had changed and she had moved them to a new location. She knew, according to her own testimony, that the coverage she had bought in 2004 might not be right for the new situation, and she wanted advice from CHI on what the new situation required, but she got none. Voss testified that she told another CHI representative, Carrie Allen, that she wanted CHI "to look at the business income the way they looked at it right from the start to give me adequate business coverage for the businesses that were operating, the same way Joe did"—but Allen never complied with the request. Thus plaintiffs clearly were not relying on advice from CHI at the time the insurance coverage that plaintiffs now complain of was acquired.

Plaintiffs seem to be contending in substance that they can sue CHI because it did not follow through on Convertino's promise in 2004 to keep looking at and advising them about their insurance coverage. But CHI had no duty to follow through. It is not and could not be claimed that Convertino's promise was legally binding. It would be different if plaintiffs had hired CHI to give advice and paid it for doing so; *Murphy* says that a "duty of advisement" may exist where "the agent receives compensation for consultation apart from payment of the premiums" (90 NY2d at 272). But there is no authority for finding a special relationship based on a gratuitous promise to consult, where no consultation takes place.

It is true that, if Voss has described the facts accurately, CHI should not get a high mark for client service. But its fault was simply in failing to do what we held in *Murphy* agents are not required to do: "to advise, guide or direct a client" in acquiring insurance coverage (90 NY2d at 273). Neither CHI's provision of advice in 2004 nor its expression of willingness to do so in the future could create a continuing duty of the kind that *Murphy* makes clear does not ordinarily exist.

There are sound policy reasons for the narrow view that *Murphy* and our other cases take of an insurance agent's duty to its client. Agents are not insurance companies and do not earn premium income. They earn, ordinarily, relatively modest commissions for bringing insurers and insureds together. It is natural for a client that has suffered a loss not covered by its insurance to blame its insurance agent; and if lawsuits by clients

against their agents are welcomed by the courts, the consequence may be to make the agent into a kind of backup insurer, a result neither sensible nor fair. In this case, I think the majority has taken an unjustifiable step in that direction, and I therefore dissent.

Chief Judge LIPPMAN and Judges RIVERA and ABDUS-SALAAM concur with Judge GRAFFEO; Judge SMITH dissents and votes to affirm in an opinion in which Judges READ and PIGOTT concur.

Order reversed, with costs, and defendant CH Insurance Brokerage Services, Co., Inc.'s motion for summary judgment denied.