## MM-1-DOE v Catholic Diocese of Peoria

2024 NY Slip Op 33288(U)

September 17, 2024

Supreme Court, New York County

Docket Number: Index No. 950246/2019

Judge: Sabrina Kraus

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. SABRINA KRAUS**                    PART          **57M**

*Justice*

---------------------------------------------------------------------X

MM-1-DOE,

Plaintiff,

- v -

CATHOLIC DIOCESE OF PEORIA, ST. JOHN THE
BAPTIST CATHOLIC CHURCH OF CLINTON, ILLINOIS,

Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 950246/2019 |
| MOTION DATE | 05/28/2024 |
| MOTION SEQ. NO. | 006 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 100, 101 were read on this motion to/for                    SUMMARY JUDGMENT                    .

## BACKGROUND

Plaintiff commenced this action seeking damages for sexual abuse he alleges was perpetrated on him by a Priest who was ordained by and the agent and or employee of defendants. Discovery is complete, and Plaintiff filed his note of issue on June 28, 2024.

Defendants now move for summary judgment based on their defense that the court lacks long arm jurisdiction over them, or alternatively based on Plaintiff's failure to include his claim against Defendants in a 2010 bankruptcy filing.

The caption of the action is amended to reflect that the action was discontinued against the Archdiocese of New York.

For the reasons set forth below, the motion is denied.

## ALLEGED FACTS

The following facts are alleged in Plaintiff's statement of facts.

950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA
Motion No.  006

Page 1 of 12

INDEX NO. 950246/2019

RECEIVED NYSCEF: 09/17/2024

From age 6 to 16, Plaintiff was groomed and sexually abused by Father Robert Creager ("Creager"). Creager was employed by the Catholic Diocese of Peoria ("CDOP") and was assigned as the pastor of St. John the Baptist Catholic Church of Clinton, Illinois ("St. John"). St. John was a parish church and was part of CDOP and under the direction and authority of the Bishop of the CDOP.

Plaintiff was molested in Illinois, which was known to defendants, and was subject to sexual abuse by Creager while in New York City in September of 1980. At that time, Plaintiff and Creager were in New York City as part of a pilgrimage to New York, and later to Rome and Holy Land sponsored, hosted, and directed by defendants. The pilgrimage included prayer, mass, the sacraments and religious discussion in NY, Rome, and the Holy Land. Creager, with the assistance and approval of CDOP and St. John, planned and lead the pilgrims.

In New York, Creager led Plaintiff to historic religious sites, 19th century churches for immigrants arriving in America and to St. Patrick's Cathedral in New York City. They prayed and participated in mass at the churches. Creager also lead prayers and said mass and administered the sacraments in the hotel room he shared with Plaintiff.

Creager also heard the confession of Plaintiff in the hotel room in NY during the pilgrimage. The Hotel Room is where Plaintiff was abused.

Creager was the pastor at St. John for years before the pilgrimage. Creager solicited the Plaintiff and others to become religious pilgrims both privately and from the pulpit. Creager asked parishioners and others attending mass at St. John to join the pilgrimage to New York, Rome, and the Holy Land during his homilies at St. John in the months before the pilgrimage. Plaintiff served Creager's masses at St. John as an altar server and witnessed the above

**950246/2019  MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No.  006**

**Page 2 of 12**

2 of 12

[* 2]

solicitations. Three ladies, Ms. Rapier, Ms. Irwin and Ms., Lecker, joined them. The ladies were directed by Creager to chaperone and supervise Plaintiff during the pilgrimage.

Defendants advertised, organized, planned, and arranged the pilgrimage. Defendants decided where Plaintiff went to mass, prayer, received the sacraments, and what activities were pursued during the pilgrimage Plaintiff shared a room with Creager.

Plaintiff disputes Defendants' claim that the pilgrimage was really controlled by a travel agency. Plaintiff alleges that although the travel agency offered an itinerary in Rome and the Holy Land, its involvement with the supervision, education, and leadership of the CDOP pilgrims was nonexistent. Moreover, the CDOP pilgrims did not follow the itinerary provided by the travel agency, but instead were directed by Creager as to pilgrimage activities.

In preparation for the pilgrimage to NY, Rome, and the Holy Land, the CDOP required the appointment of Creager as a short-term guardian of the minor Plaintiff during the pilgrimage. CDOP provided the short-term guardianship documents to Plaintiff's parents to sign. The guardianship documents appointed Creager as Plaintiff's guardian during the pilgrimage.

Pursuant to the Statutes for Synod Six in effect at the time, Priests were not permitted to accept guardianship of a child without permission of the bishop. The guardianship documents arrived at Plaintiff's home in a CDOP envelope with a letter from the CDOP to Plaintiff's parents. Upon receipt, Plaintiff's father called the offices of CDOP and talked to officials there. Plaintiff's father was advised by CDOP officials that the guardianship appointment of Creager was a requirement the plaintiff due to his young age and for medical purposes during the pilgrimage. As a result, Plaintiff's parents signed the guardianship documents and mailed them to CDOP.

950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA                    Page 3 of 12
Motion No.  006

3 of 12

Defendants knew and should have known through their employees of prior instances of sexual abuse and sleeping with minors by Creager.

In 1956, minors were sexually abused by Creager at Sacred Heart School in Moline, Illinois. There were at least three alleged sexual abuse victims in Moline prior to 1960 according to CDOP documents. In 1956, there was an additional instance of sexual abuse by Creager in DeWitt county, Illinois, a county separate from the city of Moline.

In 1960, Creager responded to the missing letter of Bishop Franz that he would per the Bishop's suggestion, join the military. Bishop Franz recommended Creager to the Military Ordinariate, which was in New York at the time. The Military Ordinariate is also known as the Archdiocese of the Military with diocesan authority over all Catholic priests in the U.S. military. The recommendation of Bishop Franz was acknowledged by clergy in New York where the Military Ordinariate was headquartered at the time. CDOP Bishop Franz recommended Creager by letter to the Military Ordinariate in New York on 5/12/60. The CDOP failed to reveal any abuse allegations against Creager to the Military Ordinariate at the time of his recommendation to the military and to the Military Ordinariate.

However, on 5/17/60, the Military Ordinariate wrote to the CDOP expressing "misgivings" about Creager's planned release/discharge by CDOP without an assignment from the Military Ordinariate. This suspicion of Creager by the Military Ordinariate due to his discharge by the CDOP was communicated to CDOP in a letter to Bishop Franz. Despite being made aware of the Military Ordinariates concerns regarding Creager being unassigned, on 5/31/60, CDOP Bishop Franz discharged Creager.

Creager was assigned by the Navy as an officer and a chaplain in January of 1961, after months of being unassigned to a position. Within a few months, Creager was forced to resign by

**950246/2019  MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No.  006**

**Page 4 of 12**

[* 4]

4 of 12

the Navy due to sexual improprieties with young men. Creager initially sent a letter to Bishop Franz on July 14, 1961, stating that he could not accept an overseas tour without "jeopardizing [his] priesthood and possibly [his] salvation" and that he would be informing the Military Ordinariate of his intention to return to CDOP. He explained that he feared war and worried he would become a recluse and be unable to carry out his priestly duties as a result.

On July 30, 1961, the Military Ordinariate in New York sent a letter to Bishop Franz explaining the circumstances surrounding Creager's departure from the military. The Military Ordinariate wrote, "I regret to write that Fr. Robert Creager has been asked to submit his resignation and he should be returning to the diocese about September 1st. I don't have the details, but it is suggested that in a future assignment he be appointed to a busy parish where he not have time to associate too much with young men as effeminate ones may cause him trouble."

Plaintiff alleges that this letter from New York clergy to the bishop of CDOP was code used by the Military Ordinariate that was understood by the defendant Diocese. and implied it was for sex with young men.[1] Creager was sent back by the Military Ordinariate to the CDOP to continue as a priest. The records of the defendants contain no investigation of Creager following the letter from the Military Ordinariate, no criminal referral to police, and no disclosure to the public or members of the church by clergy in NY or Illinois.

Creager continued abusing several minor boys when he returned to the Diocese. Plaintiff testified that defendants' employees, including the housekeeper of Creager at St. John, knew that plaintiff slept with Creager in the rectory and even washed the minor plaintiff's pajamas when he slept there.

---

[1] It is unclear to the Court whether this pertained to homosexuality or also implicated an attraction to and involvement with minors.

**950246/2019  MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**                        **Page 5 of 12**
**Motion No. 006**

According to the Report of the Attorney General of Illinois, the defendants consciously failed to act when they knew of sexual crimes against minors in the past prior to the abuse here.

Bishop Meyers of CDOP claimed lack of knowledge regarding sex abuses brought to the attention of the Diocese because of "haphazard" filing. He also testified that it was not the Church's practice to tell the public about priest sexual abuse, because CDOP wished to protect the reputation of the priest. The Bishop attempted to reinstate a priest who had molested a boy and was surprised that the parents were "so upset." In some instances, the Bishop simply assigned the accused priest to a new parish.

The hiding of sexual allegations against priests of the Peoria diocese was a "practice" according to the report of the attorney general of Illinois. In the Attorney General Report, Abusive Clerics and Religious Brothers in the Peoria Diocese are discussed. Creager is one of the priest abusers discussed and allegations of his abuse were deemed credible by CDOP.

## DISCUSSION

### *Summary Judgment Standard*

It is well settled that summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material issue of fact. *Black v. Kohl's Dept. Stores, Inc.*, 80 A.D.3d 958 (3rd Dept. 2011); *Benizii v. Bank of Hudson*, 50 A.D.3d 1372 (2008). Considering the drastic nature of the remedy, the party moving for summary judgment must establish *prima facie* entitlement to judgment as a matter of law. *Jacobsen v. New York City Health and Hospitals Corp.*, 22 N.Y.3d 824 (2014); *Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728 (2014). "This burden is a heavy one and on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party." *Jacobsen* at 833.

**950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**                                   **Page 6 of 12**
**Motion No.  006**

6 of 12

The non-moving party must be accorded the benefit of every reasonable inference from the record proof. *Winne v. Town of Duanesburg*, 86 A.D.3d 779 (2011). It is not the Court's role to determine issues of fact or credibility, but merely to determine whether such issues exist. *Vega v. Restani Const. Corp.*, 18 N.Y.3d 499 (2012); *Green v. Quincy Amusements, Inc.*, 108 A.D.3d 591 (2013); *Pearson v. Dix McBride, LLC*, 63 A.D.3d 895 (2009).

If the proponent of summary judgment fails to make a *prima facie* showing of entitlement to judgment as a matter of law, then the court must deny the motion, regardless of the sufficiency of the opposition set forth by the opponent of the motion. *Voss, supra; Smalls v. AJI Industries, Inc.*, 10 N.Y.3d 733 (2008). The proponent of a motion for summary judgment cannot rely merely on conclusory, unsubstantiated assertions. *Longtemps v. Oliva*, 110 A.D.3d 1316 (2013).

It is likewise insufficient for the proponent of summary judgment to merely point to gaps in the defendant's proof. *DiBartolomeo v. St. Peter's Hosp. of City of Albany*, 73 A.D.3d 1326 (2010); *Rachlin v. Michaels Arts & Crafts*, 118 A.D.3d 1391 (2014). A motion for summary judgment should not be granted if there is uncertainty as to the existence of triable issues of fact when viewing the evidence in the light most favorable to the party opposing the motion. *Flower v. Noonan*, 271 A.D.2d 825 (2000).

In this action, Defendants have failed to meet their burden of establishing judgment as a matter of law.

### *This Court Has Jurisdiction Over Defendants Pursuant to CPLR 302(A)(1)*

CPLR §302 subsections (a)(1), New York's long arm statute, provides in relevant part:

302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction.

**950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**                     **Page 7 of 12**
**Motion No. 006**

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state;

The Court of Appeals has repeatedly recognized that CPLR §302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction." *Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]. In addition to the "single act", personal jurisdiction attaches where: (1) "the defendant's activities here were purposeful"; and (2) there is a substantial relationship between the transaction and the claim asserted." *Id.*

In *PC-16 Doe v. Hill Regional Career High Sch.*, 223 A.D.3d 518 (2d Dept. 2024).

The Appellate Division held in pertinent part:

… plaintiff has made a prima facie showing that defendants are subject to personal jurisdiction under CPLR 302 (a) (1) which provides, as relevant, that a court may exercise personal jurisdiction over any nondomiciliary who in person or through an agent transacts any business within the state. The statute requires "[p]urposeful activities," i.e., "those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007] [internal quotation marks omitted]). The statute "does not require that the business in question be commercial in nature" (*Edwardo v Roman Catholic Bishop of Providence*, 579 F Supp 3d 456, 473 [SD NY 2022] [internal quotation marks omitted], *affd* 66 F4th 69 [2d Cir 2023]), and "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

*PC-16 Doe v. Hill Reg'l Career High Sch.*, 223 A.D.3d 518, 518–19 (2024).

The First Department affirmed the trial court's decision to exercise personal jurisdiction over out-of-state defendants pursuant to CPLR 302(a)(1) based on the plaintiff's allegation that they were sexually assaulted on a trip to New York that was organized and led by the

**950246/2019 MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No. 006**

**Page 8 of 12**

[* 8]

8 of 12

defendants' choir director. *PC-16 Doe* at 519 ("the field trip at issue . . . constituted 'purposeful activity', in New York, namely, an 'act by which . . . defendant purposefully avails itself of the privilege of conducting activities here.'") *Id.*

The facts in this matter are analogous to those in *PC-16 Doe*. Here, as alleged, Defendants authorized and promoted a trip to New York – a purposeful act – thereby invoking this State's privileges and benefits. The pilgrimage was purposeful religious activity by the Diocese of Peoria and St. John which involved soliciting pilgrims from the pulpit, the Bishop of Peoria authorizing Creager to lead pilgrims in New York, Rome and the Holy Land, obtaining coverage for Creager to be absent from his parish for almost three weeks to lead pilgrims on a pilgrimage involving vocations, evangelization, religious education and the protection of children. The pilgrimage was a means of evangelizing plaintiff and for plaintiff to evangelize others by sharing his religious experiences on the pilgrimage with others upon his return home, which he did.

During the pilgrimage, Plaintiff engaged in religious study. He also deepened his faith with prayer, daily mass, and the sacraments to increase his commitment to the church and his desire to become a priest. The evangelization of Plaintiff and others, encouragement of plaintiff/minor's vocation and the study of the catholic faith were the business of the diocese conducted in New York during the pilgrimage.

In New York, Creager led Plaintiff to historic religious cites tied to the early days of Catholicism in the U.S. They prayed and participated in mass at the churches in New York. Fr. Creager also lead prayers and said mass and administered the sacraments in the hotel room he shared with the Plaintiff. Creager also heard the confession of Plaintiff in the hotel room in NY during the pilgrimage.

**950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No.  006**

**Page 9 of 12**

9 of 12

In their reply, Defendants correctly point out that *PC-16 Doe* was a motion to dismiss rather than a summary judgment motion, where the court assumed the truth of plaintiff's allegations. However, this does not warrant a different result, as Defendant has failed to meet its *prima facie* burden in establishing the right to judgment as a matter of law. Additionally, Defendant's own reply papers acknowledge the affidavit submitted by Plaintiff contests the facts upon which they rely in seeking summary judgment.

However, the Court rejects Defendants' argument that said affidavit contradicts Plaintiff's prior testimony to the point of requiring the Court to disregard same.

### *Plaintiff's Cause of Action Under The CVA Could Not Have Been Asserted in The 2010 Bankruptcy Proceeding*

Thirty years after the subject abuse, Plaintiff filed for Chapter 7 Bankruptcy. At that time, Plaintiff did not list his claims against Defendants in his bankruptcy schedules.

Upon the filing of a bankruptcy petition, an estate is created. Section 541(a)(1) of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. 11 U.S.C. § 541(a)(1). "Property" includes causes of action possessed by a debtor at the time of the filing of the case. *In re Ross*, 548 B.R. 632, 637 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Mendelsohn v. Ross*, 251 F. Supp. 3d 518 (E.D.N.Y. 2017).

In 2010, when Plaintiff's bankruptcy case was opened, he had no legal or equitable claims which could have been asserted against the Defendants. His claims were barred by the then-operative statute of limitations.

Almost a full ten years later, New York's Child Victims Act, for the first time ever, created a window for the statute of limitations to be extended in cases like Plaintiff's.

**950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No. 006**

**Page 10 of 12**

10 of 12

The question for the court is whether Plaintiff's cause of action under the CVA accrued before 2010. The CVA provides in pertinent part:

> … every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense … committed against a child less than eighteen years of age … which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y. C.P.L.R. 214-g (McKinney).

The Court therefore concludes that Plaintiff's cause of action which could only be asserted based on the revival provisions in the CVA could not have accrued in 2010 as the CVA had not yet been enacted.

Based on the same reasoning the Court rejects Defendants' argument that the complaint must be dismissed based on a theory of judicial estoppel.

## CONCLUSION

WHEREFORE it is hereby:

ORDERED that Defendants motion for summary judgment is denied; and it is further

ORDERED that counsel appear for a virtual pre-trial conference on October 8, 2024, at 3:30 pm where a trial date will be set, and a pre-trial conference order issued; and it is further

ORDERED that, within 20 days from entry of this order, plaintiff shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

**950246/2019  MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No.  006**

**Page 11 of 12**

11 of 12

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh);]; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

This constitutes the decision and order of this court.

20240917151141SBKRAUSBFBAC609408244430B6C6924E790BCC3B

| 9/17/2024 | | | | | |
|-----------|--|--|--|--|--|
| **DATE** | | | | **SABRINA KRAUS, J.S.C.** | |
| CHECK ONE: | ☐ | CASE DISPOSED | ☒ | NON-FINAL DISPOSITION | |
| | ☐ | GRANTED ☒ DENIED | ☐ | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | ☐ | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | ☐ | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**950246/2019   MM-1-DOE vs. CATHOLIC DIOCESE OF PEORIA**
**Motion No.  006**                                                                                    Page 12 of 12

12 of 12