Solis v City of New York (2025 NY Slip Op 06673)

Solis v City of New York

2025 NY Slip Op 06673

Decided on December 02, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 02, 2025

Before: Webber, J.P., Mendez, Pitt-Burke, Higgitt, O'Neill Levy, JJ. 

Index No. 150552/15|Appeal No. 4843|Case No. 2024-02801|

[*1]Ridelin Solis etc., et al., Plaintiffs-Respondents,
v
The City of New York, et al., Defendants-Appellants.

Muriel Goode-Trufant, Corporation Counsel, New York (Lauren O'Brien of counsel), for appellants.
Law Office of Gerald P. Gross, PC, Cedarhurst (Gene R. Berardelli of counsel), for respondents.

Order, Supreme Court, New York County (Hasa A. Kingo, J.), entered March 15, 2024, which, to the extent appealed from as limited by the briefs, denied in part the motion of defendants the City of New York and Corizon Health Inc. (together, defendants) for summary judgment dismissing the complaint as against them, unanimously affirmed, without costs.
Plaintiff brought this action on behalf of the decedent who sustained injuries resulting in his death when he fell descending a staircase in Manhattan Criminal Court (MCC) while he was in the custody of nonparty New York State Office of Court Administration (OCA). Plaintiff alleged that before OCA obtained custody of the decedent, defendants deprived him of his medically necessary cane, causing him to lose his balance and fall.
On November 15, 2013, the decedent underwent a debridement procedure of an ulcer on his foot at Bellevue Hospital Center. Bellevue recommended daily dressing changes to the wound, prescribed and dispensed a post-op shoe and cane, and instructed the decedent to continue partial weightbearing. Due to his medical condition, the decedent was housed at the Rikers Island complex, North Infirmary Command. On November 19, 2013, four days after the debridement procedure, the decedent, who was scheduled to appear in MCC, was transported by the New York City Department of Corrections (DOC) from Rikers Island to the Manhattan Detention Complex (MDC), the housing area for inmates with scheduled court appearances, and the location from where he would be walked over to MCC and ultimately to the court part.
According to the testimony of the DOC deputy warden in charge of MDC, when an inmate who requires the use of a cane is transported from Rikers Island to MDC, the cane in their possession is "taken away" and stored in a secured area at the front of the vehicle. Although the common practice is for the cane to be returned once the inmate arrives at their destination, there is no written record that this is actually done. The deputy warden further testified that while at MDC, whenever someone with a cane or some other walking assistive device is immobile, the device is taken from them, but once the individual is mobile again, the device is returned. The deputy warden clarified that whenever an inmate is placed in a holding cell, the walking assistive device would be removed because it could be used as a weapon, and would be returned to the inmate whenever they leave the holding cell and again requires the use of the cane. Personnel at MDC do not document when an inmate's cane is removed or returned.
Once an inmate arrives at MDC, they are taken to a holding area in MCC near, but not necessarily on the same floor of the court part in which they are to be produced. Here, the decedent was scheduled to appear in a court part on the 13th floor; therefore he was placed in a holding area on the 12th floor of MCC designated "12-4." Inmates held in 12-4 remain in DOC's custody. Custody is transferred to OCA officers when inmates are transferred from "12-4" to the holding cell connected to the court parts on the 13th floor. The deputy warden testified that the decedent's accident occurred on a staircase between the 12th and 13th floors, and that this staircase is an area not staffed or maintained by DOC or under DOC's jurisdiction. Finally, the deputy warden testified that MDC is not equipped with surveillance cameras and he denied having any personal knowledge of whether the decedent had the cane with him when custody was transferred from DOC to OCA.
OCA Officer Daniel Magrino testified that he was the officer escorting the decedent at the time of his fall. He testified that he could not remember if he was the officer who initially took custody of the decedent from DOC, but that he was "definitely" the officer escorting the decedent after the court appearance, and that the decedent did not have a cane at the time of his fall.
After the decedent's court appearance, while Officer Magrino was escorting him and another inmate, Ralph Michel, down to the 12th floor DOC "12-4" holding cell, the decedent, who was not handcuffed and was walking without his cane, apparently lost his balance and fell headfirst, striking his head on the stair's landing and sustaining injuries that resulted in his death days later. When interviewed as part of the investigation into the decedent's fall, Michel, who witnessed the fall, stated that prior to the fall, he asked the decedent about his cane and the decedent responded that, "they" took it. The decedent did not specify who he was referring to by "they."
At the conclusion of discovery, defendants moved for summary judgment, arguing that the decedent was not in DOC custody at the time of the accident and therefore plaintiff would not be able to establish that defendants' conduct was the proximate cause of the decedent's fall, injury, and death. They contend that plaintiff's claim is speculative because the alleged failure to provide the decedent with his cane is the only negligent conduct that allegedly caused his fall and death, and there is no evidence that DOC deprived him of his cane. They argue that absent this proof, plaintiff cannot establish a breach of duty, and without a breach, any claim that defendants' conduct caused the fall necessarily fails. Supreme Court denied the motion.
Defendants argue that Supreme Court incorrectly found that plaintiff raised issues of fact in opposition to their motion. They argue that there is no evidence that DOC deprived the decedent of his cane, that on this record it is equally plausible that OCA deprived the decedent of his cane or the decedent himself misplaced it, and therefore a jury's determination as to causation would rest on sheer speculation.
On a motion for summary judgment, the moving party has the burden to establish "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Voss v Netherlands Ins. Co., 22 NY3d 728, 734 [2014], quoting Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If the moving party fails to meet this initial burden, summary judgment must be denied "regardless of the sufficiency of the opposing papers"(Voss, 22 NY3d at 734,quoting Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
Here, defendants failed to make a prima facie showing of entitlement to summary judgment as they failed to establish that they were not negligent, and if negligent, that their negligence was not the proximate cause of the decedent's injuries. There is no testimony or record evidence establishing that DOC was not the entity that deprived the decedent of his medically necessary cane. The MDC deputy warden testified that the decedent's cane would have been taken away on the bus, as well as each time he was placed in a holding cell. He acknowledged that DOC does not keep a written record of the process. Officer Magrino testified that since the decedentdid nothave his cane when he was being transferred back to DOC's custody, he did not have it when initially transferred from DOC to OCA custody. Finally, when asked about his cane before his fall, the decedent told Michel "they" took his cane. Therefore, defendant failed to eliminate all material questions of fact that defendants did not deprive the decedent of his medically necessary cane.
Defendants contend that plaintiff's claim is speculative because plaintiff cannot establish who deprived the decedent of his cane. Most importantly, defendants argue, there is no evidence that it was DOC that did so.
On the contrary, the deputy warden's testimony establishes that the decedent's cane would have been taken from him by DOC while he was on the bus and each time he was placed in a holding cell. On this record, defendants failed to establish that after arriving at MDC or after he was taken out of the "12-4" holding cell, the decedent's cane was returned to him.
Moreover, when a court is confronted with a summary judgment motion, its duty is to search the record for triable issues of fact without determining the strength of either parties' case(see Cross v Cross, 112 AD2d 62 [1st Dept 1985]; Vega 18 NY3d at 505). "Merely pointing to gaps in an opponent's evidence is insufficient to satisfy the movant's burden" (Hairston v Liberty Behavioral Mgt. Corp., 157 AD3d 404, 405 [1st Dept 2018] lv dismissed 31 NY3d 1036 [2018]). Therefore, identifying potential weaknesses in plaintiff's case is insufficient to establish entitlement to summary judgment.
We have considered defendants' remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 2, 2025