Alpha/Omega Concrete Corp. v Ovation Risk Planners, Inc. (2021 NY Slip Op 05113)





Alpha/Omega Concrete Corp. v Ovation Risk Planners, Inc.


2021 NY Slip Op 05113


Decided on September 29, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 29, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.


2019-10061
 (Index No. 605860/16)

[*1]Alpha/Omega Concrete Corp., plaintiff/second third-party defendant-respondent, 
v
Ovation Risk Planners, Inc., defendant/third-party plaintiff/second third-party defendant-appellant, Scottish American Insurance General Agency, Inc., defendant/third-party defendant/second third-party plaintiff-respondent, State National Insurance Company, defendant; Jerry Campbell, et al., second third-party defendants, Michael Villano, second third-party defendant-appellant.


Litchfield Cavo, LLP, New York, NY (Beth A. Saydak of counsel), for defendant/third-party plaintiff/second third-party defendant-appellant, Ovation Risk Planners, Inc., and second third-party defendant-appellant, Michael Villano.
Law Office of Harry C. Demiris, Jr., P.C., Westbury, NY, for plaintiff/second third-party defendant-respondent, Alpha/Omega Concrete Corp.
Keidel Weldon & Cunningham, LLP, White Plains, NY (Howard S. Kronberg of counsel), for defendant/third-party defendant/second third-party plaintiff-respondent, Scottish American Insurance General Agency, Inc.
Stonberg Moran, LLP, New York, NY (Sherri N. Pavloff of counsel), for defendant State National Insurance Company.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., and the second third-party defendant Michael Villano appeal from an order of the Supreme Court, Nassau County (Timothy S. Driscoll, J.), entered July 25, 2019. The order, insofar as appealed from, granted the motion of the defendant/third-party defendant/second third-party plaintiff, Scottish American Insurance General Agency, Inc., for summary judgment dismissing the third-party complaint, and denied those branches of the motion of the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., and the second third-party defendant Michael Villano which were for summary judgment dismissing the complaint insofar as asserted against Ovation Risk Planners, Inc., and the third through eighth causes of action in the second third-party complaint insofar as asserted against them, and for summary judgment on the third-party complaint.
ORDERED that the order is modified, on the law, (1) by deleting the provision thereof denying those branches of the motion of the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., and the second third-party defendant Michael Villano which were for summary judgment dismissing the second through fourth causes of action in the complaint [*2]insofar as asserted against the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., and substituting therefor a provision granting those branches of the motion, and (2) by deleting the provision thereof denying those branches of the motion of the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., and the second third-party defendant Michael Villano which were for summary judgment dismissing the fifth through eighth causes of action in the second third-party complaint insofar as asserted against them, and substituting therefor a provision granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
In July 2015, Alpha/Omega Building Consulting Corp. (hereinafter Consulting) was awarded a contract to perform concrete work on a construction project involving a residential high-rise apartment building being constructed in Long Island City. Before beginning work on the project, Consulting, via its principal, Anthony Frascone, contacted the second third-party defendant Michael Villano, the principal of the defendant/third-party plaintiff/second third-party defendant, Ovation Risk Planners, Inc., a retail insurance broker (hereinafter Ovation; together with Villano, the Ovation defendants), to obtain liability insurance for Consulting with respect to its work on the subject project. Villano, on behalf of Consulting, submitted a commercial insurance application to the defendant/third-party defendant/second third-party plaintiff, Scottish American Insurance General Agency, Inc. (hereinafter Scottish American), a wholesale insurance broker, which transmitted the application to nonparty Prime Specialty, Inc. (hereinafter Prime), for underwriting. Prime, in turn, placed the commercial general liability policy with the defendant State National Insurance Company (hereinafter SNIC), an insurance carrier. To pay for the policy, Consulting obtained a loan from nonparty Capital Premium Financing, Inc. (hereinafter CPF). The policy was to remain in effect from July 13, 2015, until the earlier of July 13, 2017, or the end of the project.
Consulting's work on the project was terminated prior to the project's completion. The remaining concrete work was to be performed by the plaintiff, Alpha/Omega Concrete Corp. (hereinafter Concrete). Despite their similar names, Concrete and Consulting had no corporate relationship with one another. Concrete was formed by the second third-party defendant Gerald Campbell, sued herein as Jerry Campbell, who owned a steam fitting company which was a subcontractor of the mechanical contractor on the project, performing mechanical and sprinkler work. In addition, Campbell provided funding to Consulting to perform the concrete work at the subject property in exchange for receiving a quarter of Consulting's profits.
After Consulting was terminated from the project and while in the process of forming Concrete, Campbell contacted Villano to arrange for the procurement of commercial liability insurance for Concrete through Ovation with respect to Concrete's work on the project. Villano prepared a policy change request to add Concrete to Consulting's policy with SNIC and, on August 20, 2015, transmitted the request to Scottish American. Scottish American confirmed receipt of the policy change request, but failed to forward it to Prime or SNIC.
Villano, who testified at his deposition that he was unaware that the policy change request had not been processed by Prime or SNIC, informed Campbell that Concrete was insured for the subject project. In addition, an Ovation employee requested that CPF change the billing address for invoices for the SNIC premium loan to Concrete's address, and Campbell began making monthly payments on the CPF debt. Campbell eventually paid in excess of $1 million.
During the course of performing work on the project, two claims, one for property damage and the other for personal injury, arose involving Concrete. Concrete submitted the claims to SNIC and its third-party claim administrator, but the claims were denied on the basis that Concrete was not covered by the subject policy as it had not been added as a named insured on the subject policy. Thereafter, Concrete commenced this action, inter alia, to recover damages for breach of contract against Ovation, Scottish American, and SNIC. Subsequently, Concrete discontinued this action insofar as asserted against Scottish American. Ovation thereafter commenced a third-party action against Scottish American, alleging causes of action for contribution and common-law and contractual indemnification. SNIC asserted cross claims against Scottish American and Ovation for contribution, common-law and contractual indemnification, and attorneys' fees and costs. Scottish American then commenced a second third-party action against Concrete, Campbell, Ovation, [*3]Villano, and Consulting.
Scottish American moved for summary judgment dismissing Ovation's third-party complaint. The Ovation defendants moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against Ovation, on Ovation's third-party complaint against Scottish American, and dismissing Scottish American's second third-party complaint insofar as asserted against them. In an order entered July 25, 2019, the Supreme Court, among other things, granted Scottish American's motion for summary judgment dismissing Ovation's third-party complaint, and denied those branches of the Ovation defendants' motion which were for summary judgment dismissing the complaint insofar as asserted against Ovation and the third through eighth causes of action in the second third-party complaint insofar as asserted against them, and for summary judgment on the third-party complaint. The Ovation defendants appeal.
In general, "insurance brokers have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so" (AB Oil Servs., Ltd. v TCE Ins. Servs., Inc., 188 AD3d 624, 626 [internal quotation marks omitted]; see Murphy v Kuhn, 90 NY2d 266, 270; MAAD Constr., Inc. v Cavallino Risk Mgt., Inc., 178 AD3d 816, 818). The scope of the broker's duty is "'defined by the nature of the client's request'" (Maxwell Plumb Mech. Corp. v Nationwide Prop. & Cas. Ins. Co., 116 AD3d 740, 741, quoting Loevner v Sullivan & Strauss Agency, Inc., 35 AD3d 392, 393). A claim of liability for a violation of this duty may sound in either contract or tort (see Broecker v Conklin Prop., LLC, 189 AD3d 751, 753; Gagliardi v Preferred Mut. Ins. Co., 102 AD3d 741, 741). To state a claim based upon violation of the insurance broker's common-law duty, the client must demonstrate that the broker failed to discharge its duty either by breaching the agreement with the client by failing to obtain the requested coverage or by failing to exercise due care in obtaining insurance on the client's behalf (see MAAD Constr., Inc. v Cavallino Risk Mgt., Inc., 178 AD3d at 818; Gagliardi v Preferred Mut. Ins. Co., 102 AD3d at 741).
Here, the Ovation defendants failed to establish, prima facie, that Ovation did not breach its common-law or contractual duty to Concrete. Even assuming that Campbell requested that Concrete be added to the existing policy, as the Ovation defendants argue, the deposition testimony submitted by the Ovation defendants in support of their motion demonstrated that Ovation agreed to obtain insurance for Concrete and then represented that it had done so without verifying this fact. In light of this evidence, the Ovation defendants failed to establish, prima facie, the absence of a triable issue of fact as to whether Ovation undertook a duty to Concrete which it then failed to discharge.
Whether Campbell had apparent authority to act on behalf of Consulting to request that Concrete be added to Consulting's policy or requested a new policy for Concrete presents a triable issue of fact. However, it is a separate issue as to whether Ovation failed to verify that coverage on behalf of Concrete was in place before advising Campbell that it was. Moreover, the statement of Consulting's principal that Campbell was "running the men, the job" for Consulting cannot be characterized as words which "[gave] rise to the appearance and belief that [Campbell] possesse[d] authority to enter into a transaction" on behalf of Consulting (Marshall v Marshall, 73 AD3d 870, 871 [internal quotation marks omitted]; see 150 Beach 120th St., Inc. v Washington Brooklyn Ltd. Partnership, 39 AD3d 722, 723). Likewise, Villano could not rely on Campbell's own actions or statements since an agent "cannot by his [or her] own acts imbue himself [or herself] with apparent authority" (Marshall v Marshall, 73 AD3d at 871 [internal quotation marks omitted]; see 150 Beach 120th St., Inc. v Washington Brooklyn Ltd. Partnership, 39 AD3d at 723; Lexow & Jenkins v Hertz Commercial Leasing Corp., 122 AD2d 25, 26). Villano admitted that he never contacted Consulting's principal to obtain authorization to add Concrete to Consulting's policy or to confirm whether Campbell had authority to act on behalf of Consulting. Accordingly, the Supreme Court properly denied that branch of the Ovation defendants' motion which was for summary judgment dismissing Concrete's first cause of action, alleging breach of contract, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
To successfully plead a cause of action to recover damages for conversion, "a plaintiff [*4]must show (1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right" (Giardini v Settanni, 159 AD3d 874, 875; see World Ambulette Transp., Inc. v Lee, 161 AD3d 1028, 1030-1031). "'[C]onversion occurs when funds designated for a particular purpose are used for an unauthorized purpose'" (Petrone v Davidoff Hutcher & Citron, LLP, 150 AD3d 776, 777, quoting East Schodack Fire Co., Inc. v Milkewicz, 140 AD3d 1255, 1256). "Tangible personal property or specific money must be involved" (Independence Discount Corp. v Bressner, 47 AD2d 756, 757 [emphasis omitted]; see RD Legal Funding Partners, LP v Worby Groner Edelman & Napoli Bern, LLP, 195 AD3d 968).
Here, the Ovation defendants established, prima facie, that Ovation did not convert funds belonging to Concrete. The Ovation defendants submitted evidence demonstrating that Consulting purchased the SNIC policy, financing the premium via a loan from CPF, which then began sending billing statements for the loan payments to Concrete, which Concrete paid. The Ovation defendants demonstrated that Ovation did not have control over the loan payments Concrete sent to CPF. In opposition, Concrete failed to raise a triable issue of fact. Although Ovation earned a commission upon sale of the subject policy to Consulting, Concrete did not submit any evidence indicating that Ovation received any part of the payments made by Concrete to CPF. Accordingly, the Supreme Court should have granted that branch of the Ovation defendants' motion which was for summary judgment dismissing Concrete's second cause of action, alleging conversion, insofar as asserted against Ovation.
"In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421; see Garendean Realty Owner, LLC v Lang, 175 AD3d 653, 653). A claim alleging fraud must be pleaded with particularity (see CPLR 3016[b]).
Here, the Ovation defendants demonstrated their entitlement to judgment as a matter of law dismissing Concrete's cause of action alleging fraud or intentional misrepresentation insofar as asserted against Ovation. Based upon Villano's deposition testimony that he believed the statements made by a Scottish American employee that Concrete had been added to Consulting's insurance policy, the Ovation defendants demonstrated that Villano's misstatements were not intentional as opposed to merely negligent. In opposition, Concrete failed to raise a triable issue of fact. Concrete did not submit any evidence demonstrating that Villano knew that Concrete was not insured before that fact was discovered when the January 2016 disclaimer of coverage was issued. Since Concrete failed to rebut the Ovation defendants' prima facie showing, the Supreme Court should have granted that branch of the Ovation defendants' motion which was for summary judgment dismissing the third cause of action, alleging fraud or intentional misrepresentation, insofar as asserted against Ovation.
The Supreme Court should have granted those branches of the Ovation defendants' motion which were for summary judgment dismissing the fifth cause of action in Scottish American's second third-party complaint, alleging fraud, and the sixth cause of action, alleging negligent misrepresentation, insofar as asserted against them, since Scottish American, which failed to timely process the policy change request, cannot demonstrate that it relied on any misrepresentation by the Ovation defendants to its detriment (see Broecker v Conklin Prop., LLC, 189 AD3d at 752; Garendean Realty Owner, LLC v Lang, 175 AD3d at 653).
"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (Reingold v Bowins, 180 AD3d 722, 723 [internal quotation marks omitted]; see Hong Qin Jiang v Li Wan Wu, 179 AD3d 1035, 1040). Damages for unjust enrichment are "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142). "A bare legal conclusion that it is against equity and good conscience to retain an unidentified benefit is insufficient to adequately allege that an asserted [*5]enrichment was unjust" (Reingold v Bowins, 180 AD3d at 723). Here, the Ovation defendants established, prima facie, that Ovation did not profit from Concrete's payment of loan installments to CPF (see Hong Qin Jiang v Li Wan Wu, 179 AD3d at 1040. In opposition, Concrete failed to raise a triable issue of fact. Accordingly, the Supreme Court also should have granted that branch of the Ovation defendants' motion which was for summary judgment dismissing Concrete's fourth cause of action, alleging unjust enrichment, insofar as asserted against Ovation.
The key element of a common-law cause of action for indemnification is a "duty owed the indemnitee by the indemnitor to reimburse the indemnitee for damages the indemnitee was compelled to pay for the wrongdoing of the indemnitor" (Santoro v Poughkeepsie Crossings, LLC, 180 AD3d 12, 16 [internal quotation marks omitted]; see Carter v Nouveau Indus., Inc., 187 AD3d 702, 704). Here, while the Ovation defendants submitted evidence that Scottish American failed to process the change request forwarded to it by Ovation, "[t]he predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee" (Santoro v Poughkeepsie Crossings, LLC, 180 AD3d at 16 [internal quotation marks omitted]). Since, here, Scottish American submitted evidence demonstrating that Ovation failed to fulfill its duty to Concrete and therefore would not be free from fault, and the Ovation defendants did not raise a triable issue of fact in opposition, the Supreme Court properly granted that branch of Scottish American's motion which was to dismiss the cause of action in Ovation's third-party complaint seeking indemnification from Scottish American.
Conversely, the Supreme Court also properly denied that branch of the Ovation defendants' motion which was for summary judgment dismissing Scottish American's second third-party cause of action seeking indemnification from them, as Scottish American's failure to timely process the policy change request does not excuse the Ovation defendants' failure to ensure that coverage had been obtained before advising Concrete of the same. Scottish American raised a triable issue of fact as to whether the Ovation defendants' actions contributed to Concrete's damages and, accordingly, Scottish American's claim for indemnification was not subject to summary dismissal.
The Supreme Court likewise properly granted that branch of Scottish American's motion which was for summary judgment dismissing Ovation's third-party cause of action seeking contribution. "'[W]here a party is held liable at least partially because of its own negligence, contribution against other culpable tort-feasors is the only available remedy'" (id. at 17, quoting Glaser v Fortunoff of Westbury Corp., 71 NY2d 643, 646). "'[T]he critical requirement for apportionment under . . . CPLR article 14 is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought'" (Santoro v Poughkeepsie Crossings, LLC, 180 AD3d at 17, quoting Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 71 NY2d 599, 603; see Razdolskaya v Lyubarsky, 160 AD3d 994, 997). However, "'[t]o sustain a third-party cause of action for contribution, a third-party plaintiff is required to show that the third-party defendant owed it a duty of reasonable care independent of its contractual obligations, [if any,] or that a duty was owed to the plaintiffs as injured parties and that a breach of that duty contributed to the alleged injuries'" (Santoro v Poughkeepsie Crossings, LLC, 180 AD3d at 17, quoting Guerra v St. Catherine of Sienna, 79 AD3d 808, 809; see Razdolskaya v Lyubarsky, 160 AD3d at 997). Since there was no contract between Ovation and Scottish American, and since the Ovation defendants fail to point to any authority suggesting that a wholesale broker owes a duty of care to a proposed insured, the Ovation defendants failed to meet their prima facie burden and dismissal was appropriate without regard to the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
In contrast, a retail insurance broker does owe a duty to the proposed insured (see Murphy v Kuhn, 90 NY2d at 270; AB Oil Servs., Ltd. v TCE Ins. Servs., Inc., 188 AD3d at 626; MAAD Constr., Inc. v Cavallino Risk Mgt., Inc., 178 AD3d at 818). As a result, since a question of fact exists as to whether Ovation breached its duty as a retail insurance broker to Concrete and, if so, whether breach of that duty contributed to Concrete's damages, to the extent that Scottish American is held liable to Concrete, it may seek indemnification from Ovation (see Santoro v Poughkeepsie Crossings, LLC, 180 AD3d at 17; Razdolskaya v Lyubarsky, 160 AD3d at 997).
However, the Supreme Court should have granted that branch of the Ovation [*6]defendants' motion which was for summary judgment dismissing the seventh cause of action in Scottish American's second third-party complaint, alleging negligence, insofar as asserted against them. "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party" (Espinal v Melville Snow Contrs., 98 NY2d 136, 138; see Palsgraf v Long Is. R.R. Co., 248 NY 339, 342). Here, the Ovation defendants demonstrated, as a matter of law, that they did not owe any duty to Scottish American. In opposition, Scottish American failed to raise a triable issue of fact.
"New York follows the general rule that 'attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule'" (Matter of Part 60 Put-Back Litig., 36 NY3d 342, 361, quoting Hooper Assoc. v AGS Computers, 74 NY2d 487, 491; see Board of Mgrs. of Fishkill Woods Condominium v Gottlieb, 184 AD3d 785, 790). Here, the Ovation defendants demonstrated that there is no agreement, statute, or court rule which would entitle Scottish American to an award of attorneys' fees and costs should it prevail against the Ovation defendants. In opposition, Scottish American did not submit any evidence to the contrary. Accordingly, the Supreme Court should have granted that branch of the Ovation defendants' motion which was for summary judgment dismissing the eighth cause of action in Scottish American's second third-party complaint, seeking an award of attorneys' fees and costs, insofar as asserted against them.
AUSTIN, J.P., DUFFY, IANNACCI and WOOTEN, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court